AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

| OFFENSE CHARGED | |
|---|---|
| 18 U.S.C. § 1341 - Mail Fraud<br>18 U.S.C. § 1343 - Wire Fraud<br>18 U.S.C. § 1344(1) and (2) - Bank Fraud<br>18 U.S.C. § 1349 - Conspiracy to Commit Wire and Bank Fraud | ☐ Petty<br>☐ Minor<br>☐ Misde-<br>meanor<br>☒ Felony |

PENALTY: Maximum Prison Term : 30 years
Maximum Fine : $1,000,000 or the greater of twice the gross gain or loss; Maximum Term of Supervised Release : 5 years
Mandatory Special Assessment : $100
Restitution : Up to the amount of the loss

---

Name of District Court, and/or Judge/Magistrate Location

**NORTHERN DISTRICT OF CALIFORNIA**

OAKLAND DIVISION

DEC  8 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

**DEFENDANT - U.S**

▸ KANYA TENNYSHA COLEMAN

DISTRICT COURT NUMBER

**CR11-00904  SBA**

---

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

**Federal Bureau of Investigation**

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
    ☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form  **MELINDA HAAG**

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)  **KESLIE STEWART**

---

### DEFENDANT

**IS _NOT_ IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▸

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No
If "Yes" give date filed

DATE OF ARREST ▸
Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▸
Month/Day/Year

☐ This report amends AO 257 previously submitted

---

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT  Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                    Before Judge:

Comments:

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

### OFFENSE CHARGED

18 U.S.C. § 1341 - Mail Fraud
18 U.S.C. § 1343 - Wire Fraud
18 U.S.C. § 1344(1) and (2) - Bank Fraud
18 U.S.C. § 1349 - Conspiracy to Commit Wire and Bank Fraud

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   Maximum Prison Term : 30 years
Maximum Fine : $1,000,000 or the greater of twice the gross gain or loss; Maximum Term of Supervised Release : 5 years
Mandatory Special Assessment : $100
Restitution : Up to the amount of the loss

---

Name of District Court, and/or Judge/Magistrate Location

**NORTHERN DISTRICT OF CALIFORNIA**
OAKLAND DIVISION   DEC - 8 2011

--- DEFENDANT - U.S

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

▶ BRENDA ANN MICHELSON

DISTRICT COURT NUMBER

# CR11-00904 SBA

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

**Federal Bureau of Investigation**

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE   } SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant   } MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under   }

Name and Office of Person
Furnishing Information on this form   MELINDA HAAG

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   KESLIE STEWART

---

### DEFENDANT

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction   } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer   ☐ Yes   } If "Yes"
been filed?   ☐ No   give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶   Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Defendant Address:

Date/Time:            Before Judge:

Comments:

# United States District Court

FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

VENUE: Oakland

CR11-00904 SBA

### UNITED STATES OF AMERICA,

### V.

KANYA TENNYSHA COLEMAN,
a/k/a Kanya Tennysha Hill,
a/k/a Kanya Tennysha Maximo, and
BRENDA ANN MICHELSON,
a/k/a Brenda Ann Zisner,

FILED
DEC - 8 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

### DEFENDANT.

INDICTMENT

18 U.S.C. § 1349 – Conspiracy to Commit
Mail and Wire Fraud; 18 U.S.C. § 1341 – Mail
Fraud; 18 U.S.C. § 1343 – Wire Fraud; 18
U.S.C. § 981(a)(1)(C) and
28 U.S.C. § 2461(c) – Forfeiture Allegation

A true bill.

_____
Foreman

Filed in open court this ___8___ day of
DEC 2011

_____ Clerk   12/8/11

Bail, $ _no bail warrant_

MELINDA HAAG (CABN 132612)
United States Attorney




FILED

DEC -- 8 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

SBA

UNITED STATES OF AMERICA,              )
                                        )   No. **CR11-00904**
        Plaintiff,                      )
                                        )   VIOLATIONS: 18 U.S.C. § 1349 –
    v.                                  )   Conspiracy to Commit Mail and Wire
                                        )   Fraud; 18 U.S.C. § 1341 – Mail Fraud; 18
KANYA TENNYSHA COLEMAN,                 )   U.S.C. § 1343 – Wire Fraud; 18 U.S.C. §
    a/k/a Kanya Tennysha Hill,          )   981(a)(1)(C) and 28 U.S.C. § 2461(c) –
    a/k/a Kanya Tennysha Maximo, and    )   Forfeiture Allegation
BRENDA ANN MICHELSON,                   )
    a/k/a Brenda Ann Zisner            )
                                        )   OAKLAND VENUE
        Defendants.                     )
_____)

## I N D I C T M E N T

The Grand Jury charges:

### INTRODUCTORY ALLEGATIONS

1.      At all times relevant to this Indictment:

        a.      Kanya Tennysha Coleman ("COLEMAN") was licensed by the California
Department of Real Estate as a mortgage broker.

        b.      Brenda Ann Michelson ("MICHELSON") was licensed by the California
Department of Real Estate as a salesperson.

        c.      COLEMAN operated a mortgage brokerage and real estate agency under a
number of California corporations including K Platinum Group, K Platinum Financial, K

INDICTMENT

1   Platinum Realty, and K Platinum Associates. In September 2006, COLEMAN incorporated

2   additional companies in California associated with the name K Platinum, including K Platinum

3   International, K Platinum International Associates, K Platinum International Financial, K

4   Platinum International Group, and K Platinum International Realty. Throughout this Indictment,

5   these eight companies are referred to collectively as "K Platinum."

6          d.     From approximately February 2006 through January 2007, COLEMAN

7   operated the K Platinum businesses out of office space at 1910 Olympic Boulevard, Suites 150,

8   151, and 160A, in Walnut Creek, California.

9          e.     At various times throughout 2006, K Platinum maintained at least fifteen

10  different bank accounts at various banks, including at least five accounts at The Mechanics Bank

11  in Hercules, California.

12         f.     None of the bank accounts associated with K Platinum was a trust account.

13         g.     Throughout 2006, Fedwire Funds Service ("Fedwire"), a service of the

14  Federal Reserve Banks that allowed participants to initiate funds transfers, processed all of its

15  wire transfers through a facility in New Jersey.

16         h.     FedEx was a commercial interstate carrier providing nationwide parcel

17  delivery service  throughout the United States.

18         i.     On May 30, 2006, MICHELSON purchased real property at 30 Foothill

19  Place, Pleasant Hill, California (the "Foothill Property"). COLEMAN acted as MICHELSON's

20  real estate agent and mortgage broker at K Platinum. The purchase agreement for the Foothill

21  Property stated that MICHELSON would occupy the property as her primary residence. Also on

22  May 30, 2006, MICHELSON signed an occupancy agreement acknowledging that the lender

23  relied on her representation of intent to occupy in obtaining funding for the loan secured by the

24  real property. By signing the occupancy agreement, MICHELSON also acknowledged that she

25  understood that it was a federal crime to knowingly make any false statement concerning any of

26  the facts in the occupancy agreement. MICHELSON never lived at the Foothill Property, and

27  MICHELSON knew when she purchased the property on May 30, 2006, that another woman

28  intended to reside there.

j.      The down payment for the purchase of the Foothill Property was provided by K Platinum in the form of a cashier's check drawn on a K Platinum bank account. In an addendum to the Settlement Statement for the purchase of the Foothill Property, MICHELSON certified that she had not been paid or reimbursed for any of the cash down payment for the purchase of the Foothill Property.

k.      The purchase price for the Foothill Property was $785,000. Two loans in the amounts of $628,000 and $157,000 were approved in MICHELSON's name to finance the purchase. K Platinum received a commission of $45,600. The seller's real estate agent received a commission of $15,300. In July 2006, MICHELSON received a $10,000 check from K Platinum as compensation for acting as the buyer of the Foothill Property.

l.      In approximately August 2006, MICHELSON began working at K Platinum as a real estate agent.

m.      In December 2006, K Platinum acted as the buyer's agent for the purchase of property at 957 Windmeadows Drive, Brentwood, California (the "Windmeadows Property"). The purchase price was $575,000. K Platinum received a commission of $60,500. The seller's agent received a commission of $5,950. Two loans were approved to finance the purchase in the amounts of $460,000 and $115,000. The loan applications falsely overstated the borrower's employment income by more than 100 percent of her true employment income. The loan applications falsely stated that the borrower had rental income of $2,700 per month and that the borrower intended to occupy the Windmeadows Property as her primary residence. North American Title Company in Brentwood, California, acted as the title company and escrow agent.

n.      In December 2006, K Platinum acted as the buyer's agent for the purchase of property at 5217 Rainwood Way, Antioch, California (the "Rainwood Property"). MICHELSON negotiated the purchase on behalf of K Platinum. The purchase price was $669,560. K Platinum received a commission of $64,000. The seller's agent received a commission of $8,034.72. MICHELSON received a check from K Platinum for $17,039.40 as a commission for acting as the real estate agent for the purchase of the Rainwood Property. Two loans funded the purchase in the amounts of $535,000 and $133,800. The loan applications

INDICTMENT                                    3

falsely overstated the borrower's employment income by 100 percent and falsely stated that the borrower had rental income of $2,000 per month. The loan applications also falsely stated that the borrower intended to occupy the Rainwood Property as her primary residence. Old Republic Title Company in Concord, California, acted as the title company and escrow agent.

o.    In December 2006, K Platinum acted as the buyer's agent for the purchase of property at 2760 St. Andrews Drive, Brentwood, California (the "St. Andrew's Property"). The purchase price was $785,000. K Platinum received a commission of $120,000. The seller's agent received a commission of $7,950. Two loans funded the purchase in the amounts of $628,000 and $157,000. The loan applications falsely overstated the borrower's employment income by more than 100 percent. The loan applications also falsely stated that the borrower had rental income of $6,650 per month. North American Title Company in Brentwood, California, acted as the title company and escrow agent.

p.    In 2006, the New York Life Insurance Company provided an array of insurance products. In approximately November 2006, COLEMAN purchased a "key-man" life insurance policy on her own life from the New York Life Insurance Company. That policy was redeemable only upon COLEMAN's death. At the same time, COLEMAN also purchased a deferred compensation plan that enabled her to defer some of her compensation until a later date. In the event of COLEMAN's death, the beneficiary of the deferred compensation plan would receive the benefits of the policy. Neither policy insured the investment principle of K Platinum investors.

COUNT ONE:    (18 U.S.C. § 1349 – Conspiracy to Commit Mail and Wire Fraud)

2.    Paragraph 1 above is realleged and by this reference fully incorporated herein.

3.    Beginning in approximately February 2006 and continuing until in or about April 2007, in the Northern District of California and elsewhere, the defendants,

KANYA TENNYSHA COLEMAN, and
BRENDA ANN MICHELSON,

and others known and unknown to the Grand Jury, did knowingly conspire and agree together and with other persons to commit offenses against the United States, namely mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343.

INDICTMENT                                4

1    All in violation of 18 U.S.C. § 1349.

2                    Manner and Means of Conspiracy

3        4.      The objects of the conspiracy were accomplished in substance as follows:

4               (a)     COLEMAN, MICHELSON, and other members of the conspiracy

5    recruited individuals (hereafter referred to as "Straw Buyers") to purchase real property as part of

6    a program they called Equity Share.  COLEMAN, MICHELSON, and other members of the

7    conspiracy told Straw Buyers that they would receive between $5,000 and $10,000 for the use of

8    their names and credit.  COLEMAN, MICHELSON, and other members of the conspiracy

9    referred to Straw Buyers as "investors."  COLEMAN, MICHELSON, and other members of the

10   conspiracy told Straw Buyers that they were helping people with bad credit purchase homes.

11   COLEMAN, MICHELSON, and other members of the conspiracy told Straw Buyers that K

12   Platinum would be responsible for providing money for the down payment, making monthly

13   mortgage payments, renting the house, collecting the rent, paying property taxes and insurance

14   fees, and paying for any maintenance costs.  COLEMAN, MICHELSON, and other members of

15   the conspiracy told Straw Buyers that after twelve to eighteen months, the property would be

16   sold, and at that time K Platinum and the Straw Buyer would split any profit realized.

17              (b)     COLEMAN, MICHELSON, and other members of the conspiracy

18   prepared and transmitted loan applications to mortgage lenders that included materially false and

19   misleading information.  Each loan application contained materially false and misleading

20   information about one or more of the following: the income of the Straw Buyer, the assets of the

21   Straw Buyer, the employment of the Straw Buyer, the source of the down payment made in the

22   Straw Buyer's name, and the Straw Buyer's intent to occupy the residence after purchase.

23              (c)     COLEMAN, MICHELSON, and other members of the conspiracy asked

24   potential Straw Buyers to sign blank loan documents.  This was useful both so that members of

25   the conspiracy could falsify information about the Straw Buyer and also because members of the

26   conspiracy often had not yet identified the property to be purchased in the name of the Straw

27   Buyer.

28              (d)     Members of the conspiracy regularly forged the signatures of Straw Buyers

INDICTMENT                                  5

1    on documents provided to the mortgage lenders.

2             (e)     COLEMAN knew that members of the conspiracy would access a

3    webpage at www.salary.com to determine the maximum salary for someone with the Straw

4    Buyer's employment in the Straw Buyer's geographical region.  The loan processor for K

5    Platinum would then list on the Straw Buyer's loan application the maximum salary a person

6    with that job might earn instead of the actual salary earned by the Straw Buyer.

7             (f)     COLEMAN, MICHELSON, and other members of the conspiracy

8    regularly stated in loan applications and purchase agreements that a Straw Buyer intended to

9    occupy the property while knowing it was false.

10            (g)     Members of the conspiracy regularly fabricated documents purporting to

11   support the materially false statements included in the loan applications.

12            (h)     K Platinum regularly provided the money for the down payment or deposit

13   for the purchase of real property in the Straw Buyer's name.  An employee of K Platinum or the

14   Straw Buyer would typically use funds provided by K Platinum to obtain a cashier's check listing

15   the Straw Buyer as the remitter.  In this way, members of the conspiracy fraudulently represented

16   to the mortgage lender that the money for the down payment or deposit was provided by the

17   Straw Buyer.

18            (i)     Loans obtained in the names of Straw Buyers were funded by wire

19   transfers from the lender into escrow.  The funds were then disbursed out of escrow to the seller,

20   the seller's agent, the buyer's agent, and sometimes others.  These wire transfers usually traveled

21   in interstate commerce.

22            (j)     As part of the loan application and funding process, commercial mail

23   carriers like the United Parcel Service and FedEx as well as the United States Postal Service

24   were regularly used to send documents and checks in interstate commerce.

25            (k)     K Platinum received a commission at the close of escrow for each property

26   purchased in the name of a Straw Buyer recruited through K Platinum's Equity Share program.

27   COLEMAN, MICHELSON, and other members of the conspiracy falsely represented to Straw

28   Buyers that this money would be held in a trust account to defray costs associated with the

INDICTMENT                                              6

properties and mortgage loans.

(l)     COLEMAN told potential investors in Equity Share that in the event that K Platinum could not pay the mortgages obtained in their names, insurance would pay off the mortgages and relieve investors of their obligations on the mortgage loans.

(m)     COLEMAN, MICHELSON, and other members of the conspiracy also encouraged individuals to invest in a program called "Cash on Cash" and later "the Power of Seven." COLEMAN, MICHELSON, and other members of the conspiracy told potential investors that the money would be used to facilitate purchases through the Equity Share program. COLEMAN, MICHELSON, and other members of the conspiracy also told potential investors that their money would be invested in real estate in other countries. Potential investors were promised a return of 25 percent interest and falsely assured that their principal was safe. Specifically, COLEMAN, MICHELSON, and other members of the conspiracy falsely told potential investors that their principle was insured by the New York Life Insurance Company. Investors were given promissory notes promising a return of 25 percent interest per month. Some of the promissory notes explicitly stated, "Investment principle is insured and guaranteed by New York Life Insurance Company."

COUNTS TWO THROUGH THREE:     (18 U.S.C. §§ 1341 and 2 – Mail Fraud)

5.     Paragraphs 1 through 4 above are realleged and by this reference fully incorporated herein.

6.     On or about the dates specified in Counts Two and Three, below, in the Northern District of California and elsewhere, for the purpose of executing a scheme and artifice to defraud lenders and investors as to a material matter, and for obtaining money and property from lenders and investors by means of materially false and fraudulent pretenses, representations, promises, and omissions, the defendants,

KANYA TENNYSHA COLEMAN, and<br>BRENDA ANN MICHELSON,

did cause and did aid and abet in causing the following mailings:

/ / /

INDICTMENT                    7

| Ct | Date | Carrier | From | To | Description of Mailing |
|----|------|---------|------|-----|------------------------|
| 2 | 12/18/06 | FedEx | Brentwood, California | Littleton, Colorado | $204,671.94 check sent to Aurora Loan Services from North American Title Company re the Windmeadows Property |
| 3 | 12/20/06 | FedEx | Brentwood, California | Milwaukee, Wisconsin | $572,014.87 check sent to Washington Mutual from North American Title Company re the St. Andrews Property |

Each in violation of 18 U.S.C. § 1341.

COUNTS FOUR THROUGH SEVEN:        (18 U.S.C. §§ 1343 and 2 – Wire Fraud)

7.       Paragraphs 1 through 4 above are realleged and by this reference fully incorporated herein.

8.       On or about the dates specified in Counts Four through Seven, below, in the Northern District of California and elsewhere, for the purpose of executing a scheme and artifice to defraud lenders and investors as to a material matter, and for obtaining money and property from lenders and investors by means of materially false and fraudulent pretenses, representations, promises, and omissions, the defendants,

KANYA TENNYSHA COLEMAN, and
BRENDA ANN MICHELSON,

did knowingly cause to be transmitted and did aid and abet in causing to be transmitted the following wire communications in interstate commerce through Fedwire:

| Ct | Date | Property | Entity Initiating Wire | Description of Wire |
|----|------|----------|------------------------|---------------------|
| 4 | 12/18/06 | Windmeadows Property | North American Title Company, Brentwood, California | $51,609.42 from Comerica Bank in Michigan to The Mechanics Bank in Texas |
| 5 | 12/18/06 | Windmeadows Property | North American Title Company, Brentwood, California | $15,518.45 from Comerica Bank in Michigan to The Mechanics Bank in Texas |
| 6 | 12/28/06 | Rainwood Property | Old Republic Title Company, Concord, California | $588,005.79 Comerica Bank in Michigan to Wells Fargo Bank in Minnesota |
| 7 | 12/28/06 | Rainwood Property | Old Republic Title Company, Concord, California | $13,334.72 Comerica Bank in Michigan to Wells Fargo Bank in Minnesota |

INDICTMENT                                        8

1      Each in violation of 18 U.S.C. § 1343.

2   FORFEITURE ALLEGATION:      (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) –
                                Mail and Wire Fraud Forfeiture)

3      9.     Paragraphs 1 through 8 above are realleged and by this reference fully

incorporated herein for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C)

and 28 U. S.C. § 2461(c).

       10.    Upon conviction of any of the offenses set forth in Counts One through Seven of

this Indictment, defendants,

                       KANYA TENNYSHA COLEMAN, and
                       BRENDA ANN MICHELSON,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c),

any property, real or personal that constitutes, or is derived from or is traceable to the proceeds

obtained directly or indirectly from the commission of the offense of conviction.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

INDICTMENT                              9

1    11.    If any of the property described above, as a result of any act or omission of the

2  defendant:

3                  a.    cannot be located upon the exercise of due diligence;

4                  b.    has been transferred or sold to, or deposited with, a third party;

5                  c.    has been placed beyond the jurisdiction of the court;

6                  d.    has been substantially diminished in value; or

7                  e.    has been commingled with other property which cannot be divided

8                        without difficulty,

9  the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. §

10  853(p), as incorporated by 28 U.S.C. § 2461(c).

11         All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

12

13  DATED:    8 DEC 2011                          A TRUE BILL.

14                                                FOREPERSON

15

16  MELINDA HAAG
    United States Attorney
17

18

19  MIRANDA KANE
    Chief, Criminal Division

20

21  (Approved as to form:
    AUSA STEWART

22

23

24

25

26

27

28

INDICTMENT                          10